UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| DANIEL KEITH GABBARD, | ) | |
| | ) | |
| Petitioner, | ) | 2:14-cv-00204-GFVT-JGW |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RAVONNE SIMS, WARDEN, | ) | **&** |
| | ) | **ORDER** |
| Respondent. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On a summer night in 2009, Petitioner Daniel Keith Gabbard drove his semi-tractor while intoxicated, eventually ending his journey in a head-on collision that killed a Kentucky prosecutor, Mr. Doug Wright. But this story finds its roots over twenty years prior to Mr. Gabbard's accident, when Kentucky experienced the worst DUI crash in American history.[1] The aftermath of this devastating event, which involved the death of twenty-four teenagers and the drunk driver responsible seeing only eleven years in jail, changed the public perception of drunk driving. Following what many locals perceived to be an easy sentence, Kentucky communities became more willing to convict drunk drivers on charges carrying a higher prison sentence, like

---

[1] Greg Noble, "From the Vault: Carrollton bus crash shocked Tri-State in 1988," WCPO CINCINNATI (May 5, 2016, 8:58 a.m.; updated May 14, 2017, 4:12 p.m.), http://www.wcpo.com/lifestyle/from-the-vault/from-the-vault-carrollton-bus-crash-killed-27-shocked-tri-state-in-1988. On May 14, 1988, Larry Mahoney drove the wrong way on I-71, crashing into a school bus returning from a church youth group and killing twenty-four youths and three adults. *Id.* While prosecutors charged Mahoney with twenty-seven counts of capital murder, the jury convicted him on lesser manslaughter charges, sentencing him to sixteen years. *Id.* He only served eleven. *Id.*

the empaneled jurors here, who found Mr. Gabbard guilty of wanton murder under KRS 507.020, a capital offense, rather than lesser manslaughter or homicide charges. [2]

This matter is presently before the Court on Petitioner Daniel Keith Gabbard's *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. [R. 1.] Consistent with local practice, this matter was referred to Magistrate Judge J. Gregory Wehrman, who filed a Report and Recommendation recommending that Mr. Gabbard's motion be denied. [R. 10.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to a Report and Recommendation, or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the Magistrate Judge's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Mr. Gabbard filed timely objections to Judge Wehrman's Report and Recommendation. [R. 11.] Although some of his objections are not sufficiently specific under the above criteria, the Court acknowledges its duty to review his filings under a more lenient standard than the one applied to attorneys because he is proceeding *pro se*. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). Under a more lenient construction, some of Gabbard's objections are sufficiently definite to trigger this Court's obligation to conduct a *de novo* review. *See* U.S.C. §

---

[2] Renee Charles, "How The Carrollton Bus Crash Changed Kentucky," WKYT (May 14, 2008 at 5:06 p.m.; updated 5:51 p.m.), http://www.wkyt.com/home/headlines/18951739.html. *See also Bush v. Commonwealth*, 839 S.W.2d 550, 554 (Ky. 1992) (local newspapers published stories on defendant's trial comparing him to Larry Mahoney and addressing the need for more severe punishments).

2

636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Mr. Gabbard's objections to Judge Wehrman's Recommendation [R. 11] and his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [R. 1] are **DENIED**.

I

The present action stems from a January 2010 Pendleton Circuit Court trial, during which the jury returned a verdict convicting Petitioner Daniel Keith Gabbard of wanton murder and various misdemeanor offenses. On June 8, 2009, Mr. Gabbard, a licensed commercial truck driver, was driving, intoxicated, a semi-tractor southbound on U.S. Highway 27 when he lost control, crossed the centerline of the two-lane road, and collided head-on with the northbound vehicle. Mr. Gabbard survived the crash; however, the driver of the northbound vehicle, Commonwealth's Attorney for Pendleton County Doug Wright, tragically did not. [*See* R. 10 at 1 (citing *Gabbard v. Commonwealth*, No. 2010-SC-000435, 2011 WL 2112562, at *1–2 (Ky. May 19, 2011).] Testimony at trial described erratic driving on behalf of Mr. Gabbard, and Mr. Gabbard himself admitted that he had consumed at least twelve but possibly as many as sixteen beers that day while driving. *Id.* at 2. The Commonwealth Attorney charged Mr. Gabbard under KRS 502.020(1)(b), known to Kentuckians as the "wanton murder" statute. Mr. Gabbard's defense at trial, presented through his attorney Eric Deters, was to concede his intoxication and his role in causing the decedent's death, but to dispute the state of mind necessary for a wanton murder conviction, hoping instead for a lesser conviction of manslaughter or even reckless homicide. *Id.* The jury ultimately rejected Mr. Gabbard's defense, finding him guilty of wanton

murder but recommending the minimum punishment, twenty years of imprisonment, possible for that crime. *Id.*

Mr. Gabbard appealed the jury decision, arguing the evidence did not establish the aggravated wantonness needed to elevate a second-degree manslaughter or reckless homicide charge to wanton murder. He also brought ineffective assistance of counsel claims and presented an argument regarding the full use of his peremptory juror strikes. However, the Kentucky Supreme Court affirmed his conviction on direct appeal. *Id.* at 3–5.

In addition to denying his appeal, Kentucky courts also repeatedly denied Mr. Gabbard post-conviction relief. In November 2011, Mr. Gabbard filed a motion pursuant to Kentucky Rule of Criminal Procedure 11.42 based on claims of ineffective assistance of counsel. The trial court conducted an evidentiary hearing with several witnesses, including Mr. Gabbard's trial counsel Eric Deters. The trial court ultimately denied the Rule 11.42 motion, and the Court of Appeals affirmed the denial. *Id.* at 5. In October 2014, the Kentucky Supreme Court denied Mr. Gabbard's motion for discretionary review. *Id.* at 6.

Following this exhaustion of state remedies, Mr. Gabbard filed the instant § 2254 motion in December 2014. *Id.* Mr. Gabbard argues three main errors by the Kentucky courts: failure to grant a directed verdict because there was insufficient evidence at trial to support a wanton murder conviction, failure to find ineffective assistance of counsel on at least eleven separate instances; and failure to strike two jurors for cause. [*See* R. 1.] Magistrate Judge Wehrman recommended denying all of Mr. Gabbard's claims [R. 10], and Mr. Gabbard objects to all bases for the Magistrate's recommendation. [R. 11.]

II

A

In his § 2254 petition, Mr. Gabbard argues the state courts' failure to grant his motion for directed verdict was either contrary to or an unreasonable application of clearly established federal law as to the conclusion that the trial lacked sufficient evidence to support a wanton murder conviction.[3] In Kentucky, an appellate court reviews a grant or denial of a directed verdict by considering "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Sluss v. Commonwealth*, 381 S.W.3d 215, 219 (Ky. 2012) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). A defendant is only entitled to a directed verdict if and when the evidence shows that a guilty verdict was "clearly unreasonable." *Id.* Kentucky law has established that intoxication may suffice to prove "circumstances manifesting extreme indifference to human life." *Id.* In fact, Kentucky has consistently found that similarly situated defendants were not entitled to a directed verdict.[4]

For habeas review of the sufficiency of evidence, "the relevant questions is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis original). A court reviewing a record of facts

---

[3] To the extent, Mr. Gabbard argues the state courts' decisions were contrary to applicable Kentucky law, this Court cannot review Mr. Gabbard's petition on federal habeas review. *Walters v. Hubbard*, 725 F.2d 381, 382–83 (6th Cir. 1984).

[4] *See, e.g.*, *Sluss v. Commonwealth*, 381 S.W.3d 215 (Ky. 2012) (conflicting evidence as to defendant's level of impairment was not enough for a directed verdict on defendant's state of mind); *Berryman v. Commonwealth*, 237 S.W.3d 175, 178 (Ky. 2007) (driving recklessly and under the influence amounted to more than an accident resulting from driver's failure to pay attention to the road and manifested an extreme indifference to human life); *Cook v. Commonwealth*, 129 S.W.3d 351, 362–63 (Ky. 2004) (evidence of intoxication and speeding was enough for a jury to reasonably infer an extreme indifference to human life); *Brown v. Commonwealth*, 975 S.W.2d 922, 923–24 (Ky. 1998) (the question of whether conduct demonstrates extreme indifference to human life is a question to be decided by the jury); *Estep v. Commonwealth*, 957 S.W.2d 191, 193 (1997) (evidence of defendant being under the influence of drugs and speeding was enough to find extreme indifference to human life).

that support conflicting inference must assume that the trier(s) of fact resolved these conflicts in favor of the prosecution. *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

Under Kentucky Revised Statute 507.020, "A person is guilty of murder when: . . . Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." During the trial, a medical expert testified that blunt force trauma from the collision was the cause of Mr. Wright's death. *Gabbard v. Commonwealth*, No. 2010-SC-000435, 2011 WL 2112562, at *1 (Ky. May 19, 2011). Witnesses testified to seeing Mr. Gabbard speeding and swerving back and forth across the center line of the road. *Id.* An accident reconstructionist's report indicated Mr. Gabbard never applied his breaks. *Id.* Investigators testified to finding eight unopened cans of beer in and around Mr. Gabbard's truck. *Id.* Mr. Gabbard admitted he had consumed at least twelve beers, and he admitted that, during the drive, he realized he was intoxicated but did not stop. *Id.* at *2. Mr. Gabbard did not dispute the testimony concerning his driving. He maintains, instead, that the prosecution had insufficient evidence to find the appropriate *mens rea*: "indifference to the value of human life." *Id.*

Assuming that the evidence shows facts supporting conflicting inferences as to whether Mr. Gabbard demonstrated "indifference to the value of human life," this Court must assume that the jury resolved this conflict in favor of the prosecution. *McDaniel*, 558 U.S. at 133. The constitutional right to a jury trial guarantees "the common-sense judgment of a jury;" jurors are not required to ignore their own common sense and experiences. *See United States v. Jones*, 108 F.3d 668, 676 (6th Cir. 1997). While the jury could have interpreted Mr. Gabbard's drinking as "false confidence," as he claims, the jury could draw on common sense and experience to also

6

interpret Mr. Gabbard's drinking as "indifference to the value of human life." Given the prevalence of alcohol-related driving accidents and the relevant facts of this case, a rational juror could have concluded Mr. Gabbard's conduct satisfied the elements of KRS 507.020. Thus, his objections and claims as to habeas relief for insufficient evidence must be denied.

B

Additionally, Mr. Gabbard presents numerous claims of ineffective assistance of counsel. The Court considers each of Mr. Gabbard's arguments below, respectively.

1

At the outset, the Court notes that four of Mr. Gabbard's ineffective assistance of counsel claims must be denied, because they are concerned primarily with counsel's reasonable trial strategy. Namely, Mr. Gabbard's specific claims are: (1) evidence of bad acts [R. 1-1 at 7; R. 11 at 3], (2) wearing of jail garb [R. 1-1 at 9; R. 11 at 5], (3) counsel's comments to the jury [R. 1-1 at 12; R. 11 at 9], and (4) statements to law enforcement officials [R. 1-1 at 14; R. 11 at 10]. While "the label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel," *White v. McAninch*, 235 F.3d 988, 995 (6th Cir. 2000), decisions that "might be considered sound trial strategy" are ordinarily not grounds for ineffective assistance of counsel. *See Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Pursuant to *Strickland v. Washington*, 466 U.S. 668, 689 (1984), a habeas petitioner must overcome the presumption that counsel's conduct falls within the wide range of sound trial strategy. Because Mr. Gabbard has not overcome that presumption on a number of his claims, his objections must be overruled and the claims are denied.

The record indicates that a number of defense counsel's decisions flow out of counsel's—and presumably the defendant's—trial strategy of cooperating fully with the

7

authorities, accepting the facts as presented by the prosecution as true, and essentially attempting to garner sympathy from the jury to negate the requisite *mens rea* for wanton murder. [*See* R. 10 at 12–18.] Counsel's choices to have Mr. Gabbard wear jail garb,[5] to advise Mr. Gabbard to give inculpatory statements to law enforcement, and to refrain from moving to separate witnesses may be considered atypical, but reasonable from counsel's perspective at the time. *See Strickland*, 466 U.S. at 689. The same holds true for counsel's decision to not object to the introduction of evidence regarding Mr. Gabbard's previous drinking and driving habits, as well as for counsel's comments throughout the trial which Mr. Gabbard now considers "disparaging" and "prejudicial." [*See* R. 1-1 at 12–13.]

As discussed in greater detail below, Mr. Gabbard maintains his "false confidence" in his abilities to drive under the influence resulted in the decedent's death, and not the indifference to the value of human life necessary to sustain a wanton murder conviction. [*See id.* at 3–4.] Defense counsel's strategy of readily admitting Mr. Gabbard's bad habits of driving under the influence in hopes of demonstrating a lack of the requisite *mens rea* cannot now be deemed ineffective assistance of counsel simply because Mr. Gabbard was ultimately convicted of wanton murder. As the Supreme Court has noted, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not

---

[5] The State cannot compel an accused criminal defendant to stand trial while dressed in identifiable prison garb. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). However, the failure to make an objection negates the "compulsion" required to establish a constitutional violation. *Id.* 512–13. Here, both Mr. Gabbard's counsel and Mr. Gabbard himself stated on the record that Mr. Gabbard chose to wear prison clothing, despite objections by the Commonwealth of Kentucky. DVD: Trial Day 1 at 9:33 a.m., Commonwealth v. Gabbard, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, Jan. 12, 2010). While Mr. Gabbard maintains that Mr. Deters's advice was "tantamount to force" because he was unaware of its negative impact [R. 11 at 5], the colloquy at the bench during trial was enough to place Mr. Gabbard on notice that this choice was not normal. Trial Day 1 at 9:33 a.m. Furthermore, Mr. Gabbard admitted that he had been convinced this was the right thing to do. DVD: Post-Conviction Hearing at 11:08 a.m., Commonwealth v. Gabbard, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, July 12, 2012). Mr. Gabbard had the opportunity to object to his counsel's advice during trial, and his failure to do so negates any "compulsion."

8

defend a particular client in the same way." *Strickland*, 466 U.S. at 689–90. Because Mr. Gabbard has failed to demonstrate counsel's representation fell outside the bounds of what might be considered sound trial strategy, his objections on the four ineffective assistance of counsel claims addressed above must be overruled.

**2**

After a careful review of the record, another four of Mr. Gabbard's ineffective assistance of counsel claims must be denied because of Mr. Gabbard's failure to set forth a sufficient showing of either deficient performance or prejudice under *Strickland*. Namely, these four claims are: (1) failure to move to separate witnesses [R. 1-1 at 8; R. 11 at 4], (2) stipulating to blood alcohol tests [R. 1-1 at 10; R. 11 at 5], (3) failure to investigate and prepare a defense [R. 1-1 at 14; R. 11 at 11], and (4) failure to obtain expert witnesses [R. 1-1 at 15; R. 11 at 12]. To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance caused the petitioner prejudice. *Strickland*, 466 U.S. at 687. Showing deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Showing prejudice requires showing a reasonable probability or substantial likelihood of a different end result but for the error of counsel. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

Mr. Gabbard argues counsel was ineffective for his failure to move to separate witnesses during trial, but Mr. Gabbard fails to explain how this failure prejudiced him in any way, or even that counsel's decision not to invoke Kentucky Rule of Evidence 615 was *per se* deficient practice. In his objections, Mr. Gabbard summarily states that counsel's failure to move to separate witnesses is "further proof that the Petitioner's trial was nothing more than a prolonged

sentencing hearing for wanton murder." [R. 11 at 4.] As Judge Wehrman noted, counsel customarily moves to separate witnesses; however, a trial court's failure to separate witnesses during trial "does not amount to the deprivation of a constitutional right and therefore cannot form the basis of federal habeas relief." *Pillette v. Berghuis*, 630 F. Supp. 2d 791, 803 (E.D. Mich. 2009) (citing *Mathis v. Wainwright*, 351 F.2d 489 (5th Cir. 1965)), *aff'd in part, rev'd on other grounds, Pillette v. Berghuis*, 408 F. App'x 873 (6th Cir. 2010).

Next, Mr. Gabbard takes issue with counsel's failure to object to the blood alcohol tests admitted into evidence by the prosecution. Mr. Gabbard claims his counsel was ineffective because counsel stipulated to the validity and results of all blood alcohol tests during the trial. [R. 1-1 at 18; R. 11 at 6.][6] However, Mr. Gabbard has not shown that such error was prejudicial. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. In order to prevail on an ineffective assistance of counsel claim for failure to object to the tests, Mr. Gabbard must show more than "some conceivable effect on the outcome of the proceeding." *Id.* Mr. Gabbard must prove existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. No evidence in Mr. Gabbard's Petition [R. 1-1] or his objections to the Report and Recommendation [R. 11] show that the outcome would be different had Mr. Deters objected to the evidence. Primarily, Mr. Gabbard has not shown that the results of the test results were

---

[6] Mr. Gabbard also seems to raise an additional claim of ineffective assistance of counsel against his first attorney, who represented Mr. Gabbard initially when law enforcement interviewed Mr. Gabbard and drew blood for the alcohol test. However, Mr. Gabbard has not raised this claim in any prior filings and this claim was not considered by Judge Wehrman. To raise a claim of ineffective assistance against an attorney at a collateral proceeding, the defendant must demonstrate that the underlying claim has merit. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). Here, this Court has denied the underlying claim, ineffective assistance of trial counsel for failure to object. Thus, Mr. Gabbard cannot meet the threshold required under *Martinzez* to bring a second claim of ineffective assistance of counsel against his attorney at the state evidentiary hearing on July 12, 2012.

inadmissible evidence under the Kentucky Rules of Evidence. Thus, even if Mr. Deters had objected to the admission of the test results, Mr. Gabbard has not shown that the evidence would have been excluded. Furthermore, even if the test results were improperly admitted as evidence, Mr. Gabbard has not shown that this error resulted in his conviction. Even without the evidence of his blood alcohol content, Mr. Gabbard himself testified he drank between twelve and sixteen beers during the drive home, though he knew such behavior was "wrong." DVD: Trial Day 3 at 11:19 a.m., *Commonwealth v. Gabbard*, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, Jan. 2010). Mr. Gabbard also admitted that such behavior was dangerous. *Id.* at 12:00 p.m. Stipulating to the test results was part of the Defense counsel's strategy in hopes of demonstrating a lack of the requisite *mens rea*; these techniques cannot now be deemed ineffective assistance of counsel simply because the strategy did not work. *See Strickland*, 466 U.S. at 689–90. Because Mr. Gabbard has failed to demonstrate the requisite prejudice required under *Strickland*, Mr. Gabbard's ineffective assistance of counsel claim as to the failure to object to the blood alcohol test is denied.

Gabbard's claim for ineffective assistance based on counsel's alleged failure to investigate and failure to prepare a defense also fails under *Strickland*. Gabbard maintains counsel failed to hire an accident reconstructionist to rebut the findings of the prosecution's reconstructionist, and that counsel "did not interview a single witness in preparation for showing that he Petitioner was not guilty of wanton murder, but something less." [R. 11 at 12.] At certain times, counsel's failure to reasonably investigate a case can serve as grounds for a finding of ineffective assistance of counsel. *See, e.g.*, *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir. 2005) ("Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of

11

the case and when that failure prejudices his or her client.") (compiling cases). However, a petitioner must provide specific information about what his attorney should have investigated in order to prevail on the claim. *See, e.g.*, *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (finding a defendant alleging a failure to investigate must show "*with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial") (emphasis added). Mr. Gabbard has not alleged that hiring a defense accident reconstructionist would have altered the end result of the trial, nor has he set forth specific information regarding possible witnesses he wished his attorney had interviewed. [*See* R. 11 at 12.] While Mr. Gabbard's attorney only called Mr. Gabbard as a witness at trial, without such specific information, Mr. Gabbard's claim that Mr. Deters failed to reasonably investigate and prepare a defense must be denied.

Similarly, Gabbard's argument that counsel was ineffective for failing to obtain expert witnesses must fail. Even after Magistrate Judge Wehrman drew attention to Mr. Gabbard's conclusory argument on that claim [*see* R. 10 at 17–18], Gabbard failed to provide specific information about what type of expert counsel should have retained and what information that expert could have contributed to the case. [*See* R. 11 at 12–13.] Under *Strickland*, the petitioner has the burden of proving deficient performance and resulting prejudice. 466 U.S. at 687. Finding Gabbard has not adequately proven either prong, his claim is denied.

**3**

Gabbard argues for ineffective assistance of counsel based on his attorney's failure to move for a change of venue. [R. 1-1 at 11; R. 11 at 7]. "If pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the trial court should grant the defendant a change in venue." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007) (citing *Irvin v. Dowd*, 366

U.S. 717, 722-24 (1961)). Such prejudice can be either presumptive or actual, although presumptive prejudice is rare and occurs only when "an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Id.* Where no presumptive prejudice is found, courts must determine whether any pretrial publicity rises to the level of actual prejudice to the defendant. *Id.*

Based on the record, this case is not the rare one where prejudice to Mr. Gabbard is presumed.[7] *See id.*; *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998). Therefore, the Court considers whether Mr. Gabbard faced actual prejudice in Pendleton Circuit Court. "The primary tool for discerning actual prejudice is a searching voir dire of prospective jurors." *Foley*, 488 F.3d at 387. The Court must review the statements made by potential jurors at voir dire "to determine whether a community-wide sentiment exists against the defendant." *Id.*; citing *Nevers v. Killinger*, 169 F.3d 352, 366 (6th Cir. 1999). A potential juror's prior knowledge of the case, or even preexisting opinion of the merits of the case, are not important to determine prejudice; the relevant inquiry is whether the juror swore he or she could set aside prior-formed opinions and deceide the case on the merits. *Id.* (citations omitted). Here, where the case involved a local public figure, many potential jurors had previous contact(s) with either Mr. Gabbard or Mr. Wright. The Circuit Court Judge conducting voir dire repeatedly asked potential jurors if they could be "fair and impartial" to both parties, retaining only the potential jurors who answered, under oath, that they could in fact be fair and impartial. *See generally*, DVD: Trial Day 1, *Commonwealth v. Gabbard*, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, Jan. 2010). For those jurors who stated they could not set aside any bias, the judge

---

[7] *See* DVDs: Trial Day 1, Trial Day 2, and Trial Day 3, Commonwealth v. Gabbard, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, Jan. 2010). At no point during the trial was the audience or jury "inflammatory" or "circus-like" or even rowdy, indicating no presumptive prejudice. *See Foley*, 488 F.3d at 387.

13

dismissed them. *Id.* at 9:57 a.m.; 10:11 a.m.; 10:22 a.m. Later in voir dire, the Commonwealth's Attorney took several minutes to discuss how the potential jurors could only use evidence presented at trial to make their decisions; potential jurors could not draw from any rumors, social media accounts, news accounts, etc. *Id*. at 11:24 a.m. When asked if any potential juror did not understand or could not do this, no potential juror responded. *Id.*

Many potential jurors expressed contact with one or both parties prior to the case, and many potential jurors had heard of the case prior to the trial. However, potential jurors who expressed evidence of bias were dismissed, and all retained potential jurors responded under oath that they could fairly and impartially review the evidence presented. The statements made during voir dire do not establish a "community-wide sentiment" against Mr. Gabbard. Because there was no prejudice in Pendleton Circuit Court, trial judge was unlikely to grant a motion to change venue. Thus, even if defense counsel was deficient for failing to move for a change of venue, Gabbard can prove no prejudice resulting from that alleged deficiency. This ineffective assistance of counsel claim must also be denied.

4

Additionally, Mr. Gabbard claims he experienced ineffective assistance of counsel because Mr. Deters failed to advise Mr. Gabbard of a "favorable plea offered by the prosecution." [R. 1-1 at 15.] Mr. Gabbard maintains he would have been willing to accept a lesser sentence. *Id.* at 16. A claim of ineffective assistance of counsel in the context of a plea bargain is governed by the test in *Strickland*: counsel must have demonstrated ineffectiveness and that behavior must have resulted in prejudice. *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."

*Frye*, 566 U.S. at 145. However, the plea deal in *Frye* was a formal deal, with a fixed expiration date. *Id.* At Mr. Gabbard's state post-conviction Rule 11.42 hearing, the prosecution testified that the Commonwealth of Kentucky never offered Mr. Gabbard a formal deal, the parties just exchanged discussions concerning potential deals. *See* DVD: Post-Conviction Hearing at 11:52 a.m., *Commonwealth v. Gabbard*, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, July 12, 2012). Mr. Gabbard maintains that he would have accepted a plea deal (*See id.* at 11:20 a.m.), but he must also show a reasonable probability that the prosecution would adhere to the agreement and that the agreement would have been accepted by the trial court. *See Frye*, 566 U.S. at 149–50. "The likelihood of a different result must be substantial, not just conceivable." *Docherty v. United States*, 536 Fed. App'x 547, 551 (6th Cir. 2013) (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). While Mr. Gabbard has alleged a "reasonable probability" that he would have accepted an offer by the prosecution, he is unable to show that the prosecution ever made an offer, nor has he shown that the prosecution would have made an offer absent Mr. Deters's comments during negotiation. *See Docherty*, 536 Fed. App'x at 552. Thus, because Mr. Gabbard cannot demonstrate he was prejudiced by Mr. Deters's behavior,

## C

Finally, Mr. Gabbard challenges his conviction based on two jurors that the trial court refused to strike for cause. [R. 1-1 at 6.] At trial, Mr. Deters objected to the court retaining two potential jurors, stating that both jurors should have been dismissed for cause. DVD Trial Day 1 at 12:33 p.m., *Commonwealth v. Gabbard*, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, Jan. 2010). Mr. Deters struck both of these potential jurors using peremptory strikes, but Mr. Gabbard claims the trial court's failure to strike them for cause denied him the right to the effective use of all of his peremptory strikes. *See Shane v.*

*Commonwealth*, 243 S.W. 3d 336 (Ky. 2007). Mr. Gabbard raised this issue on appeal to the Kentucky Supreme Court, and the court responded:

> Although Gabbard is correct that in *Shane* we held it to be reversible error for the trial court to, in effect, require a defendant to use one of his otherwise exhausted peremptory strikes to remove a potential juror who should have been removed for cause, we have since modified that holding. In (coincidentally) *Gabbard v. Commonwealth*, 297 S.W.3d 844 (Ky. 2009), we noted that a *Shane* violation is not prejudicial if ultimately the jury includes no one the defendant wished to remove but could not because of the violation and resulting need to use a peremptory strike on someone the court should have excused for cause. We held, accordingly, that to preserve the alleged error and to show prejudice, a defendant who wishes to complain on appeal "that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike ... must identify on his strike sheet any additional jurors he would have struck." *Gabbard*, 297 S.W.3d at 854.

*Gabbard v. Commonwealth*, No. 2010-SC-000435-MR, 2011 WL 211562 at *5 (Ky. May 19, 2011). Now, Mr. Gabbard raises two claims concerning this instance. Predominately, Mr. Gabbard asserts the Kentucky Supreme Court's decision to uphold the trial court's failure to strike both potential jurors for cause was contrary to, or involved an unreasonable application of, clearly established Federal law. Furthermore, Mr. Gabbard includes a final claim of ineffective assistance of counsel, indicating that Mr. Deters failed to provide effective assistance when he failed to preserve the trial court's error in failing to strike the potential jurors for cause.

The Court first turns to Mr. Gabbard's challenge to the Kentucky Supreme Court decision. Mr. Gabbard claims that this decision was objectively unreasonable and a denial of his constitutional right to a fair trial. [R. 1-1 at 17–18.] To determine whether a juror may be excused for cause, the trial court must determine whether the juror's views would impair or prevent his or her duties as a juror in accordance with his or her instructions and oath. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (citations omitted). In Kentucky, a failure to strike a potential juror for cause requires the appellate court to reverse the conviction if the defendant exhausted all peremptory challenges. *Shane*, 243 S.W.3d 336. But peremptory challenges are determined

by state law and are not matters of Federal law. *Rivera v. Illinois*, 556 U.S. 148, 152 (2009). The trial court could have withheld all peremptory challenges without impairing a defendant's constitutional guarantee of a fair trial with an impartial jury. *Id.* Thus, the Kentucky Supreme Court's decision to uphold the trial court's failure to strike both potential jurors for cause was not contrary to Federal law, and this Court has no legal cause to disturb the determination of the Kentucky Supreme Court. *See id.*

Next, the Court considers Mr. Gabbard's final ineffective assistance of counsel claim. The Kentucky Supreme Court found that Mr. Deters failed to properly preserve the trial court's error in failing to dismiss the potential jurors for cause. [R. 1-1 at 6.] Mr. Deters objected to the two jurors (DVD: Trial Day 1 at 12:33 p.m.), but he failed to identify any additional jurors that he would have struck had the trial court struck these jurors for cause. *Gabbard*, 2011 WL 2112562 at *5. In order to preserve the record on appeal, Mr. Deters should have indicated additional jurors he wished to strike using peremptory challenges. Regardless, Mr. Deters testified at the post-conviction hearing that the defense "had enough" peremptory challenges, and there were no other jurors he had wanted to strike. DVD: Post-Conviction Hearing at 10:40 a.m., Commonwealth v. Gabbard, No. 09-CR-00025 (Pendleton Circuit Court, Commonwealth of Kentucky, July 12, 2012). Thus, there were no jurors that Mr. Deters would have listed if he had known to do so. As stated previously, to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance caused the petitioner prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Even if Mr. Deters had known he needed to preserve the record in that way, neither Mr. Deters nor Mr. Gabbard have indicated who else on the jury panel they wanted to challenge. Accordingly, since no allegedly biased juror sat among the twelve jurors who voted to convict

Mr. Gabbard, and since counsel indicated that he had no other jurors for whom he wished to use a peremptory strike, Mr. Gabbard's claims that the Kentucky Supreme Court decision was contrary to Federal law and that Mr. Deters provided ineffective assistance of counsel for failure to preserve the record must fail.

### III

Mr. Gabbard made a poor decision to drink and drive on the night in question. While this Court believes Mr. Gabbard did not fully appreciate the risk of his actions, the facts remain uncontested that his drinking caused the wreck that ended Mr. Wright's life. In hindsight, Mr. Deters's trial strategy was unsuccessful, but this does not rise to the level of ineffective assistance of counsel. Mr. Gabbard was given a fair trial where he was convicted by an impartial jury of his peers. In conclusion, after reviewing de novo the entire record, as well as the relevant case law and statutory authority, the Court agrees with Judge Wehrman's analysis of Gabbard's claims. Accordingly, and the Court being otherwise sufficiently advised, it is hereby ORDERED as follows:

1. Petitioner Gabbard's Objections to the magistrate's Report and Recommendation [R. 11] are **OVERRULED**;

2. The Magistrate's Report and Recommendation [R. 10] as to Petitioner David Keith Gabbard is **ADOPTED** as and for the opinion of the court;

3. Mr. Gabbard's § 2254 petition is **DENIED**; and

4. **JUDGMENT** is entered in favor of the Respondent.

This the 6th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge